IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| JAYMES ANTHONY STARK,<br>Plaintiff,<br><br>vs.<br><br>LEE COUNTY, IOWA, STEVE SPROUL, JEREMY HAMILTON, ZACHARY COPPAGE, DUSTIN YOUNG, CLINT RAY, AND THE STATE OF IOWA<br>Defendants. | Case No. 3:18-cv-00069-CFB<br><br><br>DEFENDANTS LEE COUNTY, IOWA et al's BRIEF IN SUPPORT OF SUMMARY JUDGMENT |

COMES NOW, Defendant Lee County, Iowa et al, pursuant to FRCP 56 and LR 56(a)(2) and submits this brief in support of their motion for summary judgment.

Table of Contents

FACTUAL / PROCEDURAL BACKGROUND ..... p. 2

SUMMARY JUDGMENT STANDARD ..... p. 4

Discussion

I. STARK FAILED TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES PRIOR TO BRINGING THAT PART OF HIS COMPLAINT BASED ON THE CONDITIONS OF HIS IMPRISONMENT AT THE LEE COUNTY CORRECTIONAL CENTER ON OR ABOUT JUNE 29-30, 2016. ..... p. 4

II. COUNT III OF STARK'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS FRIVILOUS, MALICIOUS AND FAILS TO STATE A CLAIM UPON WHICH RELEIF CAN BE GRANTED ..... p. 6

III. DEPUTY SPROUL IS ENTITLED TO QUALIFY IMMUNITY ..... p. 7

IV. STARK PRESENTS NO EVIDENCE OF A CONSPIRACY
TO ESTBLISH OR CAUSE STARK TO VIOLATE HIS PAROLE    p. 11

V. LEE COUNTY IS ENTITLED TO SUMMARY JUDGMENT
BECAUSE NO EMPLOYEE OF LEE COUNTY IS LIABLE
TO STARK    p. 11

CONCLUSION    p. 11

## FACTUAL / PROCEDURAL BACKGROUND

On June 29, 2016, Jaymes Stark (Stark) was an inmate at the Lee County Correctional Center. (App, p.12) He was being transported to a medical appointment by Deputy Sheriff Steve Sproul. (App, p.12) On the return from a medical appointment, with Stark in the back seat, passenger side and unbelted, Sproul overheard on the radio of an armed robbery in progress at Connections Bank on 48th Street in Ft. Madison, Iowa. (App, p.40) Sproul responded by driving to the robbery location with the intent provide observation information to Ft. Madison police officers. (App, pp.41-42)

As Sproul was waiting in the parking lot of the bank, he observed the robbery suspect exit the south door of the bank and began running across a vacant lot towards a strip mall. (App, p.38) Concerned the police would lose sight of the suspect, Sproul followed him into the vacant lot area. (App, pp.41-42) He told Stark to get down in the back seat. (App, p.38) As Sproul approached the suspect in his vehicle, the suspect turned and raised a pistol in Sproul's direction. (App, p.48) Shortly thereafter, a bullet entered the windshield toward the driver's side. (App, pp.48-49) Sproul took a sharp right evasive turn as the suspect continued to fire, striking Sproul's vehicle 2 more times. (App, pp.48-49) While Sproul departed the scene the Ft. Madison Police

were able to engage the suspect and he was shot. (App, p.43) Hearing over the radio that the suspect was in custody, Sproul briefly returned to the scene and then returned Stark to the Correctional Center. (App, p.48)

Upon his return to the Lee County Correctional Center Stark complained he had been injured while riding in the back of Sproul's vehicle during the shooting and subsequent evasive action by Sproul. Stark was taken to Ft. Madison Community Hospital and evaluated. He was returned to the Correctional Center. (App, p.24)

Upon return from the hospital, Stark made numerous demands concerning where he was to be housed and created a disturbance requiring a response by correctional officers.

The next day Stark complained of neck pain and demanded to be sent to the hospital again. Stark was claiming he was not receiving adequate medical care. After consultation with the County Attorney it was determined that Stark would be released from Lee County and taken to Des Moines County on an outstanding warrant.

Stark objected to the transfer and wanted to call the Ombudsman. He was allowed to do. Stark was taken to the Ft. Madison Community Hospital June 30, 2016 and from there to the Des Moines County Correctional Facility in Burlington.

On January 28, 2018, Stark filed a civil right action alleging many of the some facts as in the present action. The Defendant's affirmatively pled that Stark had failed to exhaust available administrative remedies. (App, pp.4-13) After some email exchanges between the parties and discussion with the Court Stark decided to dismiss 3-18-CV-00010, without prejudice in no small part because Stark had been granted parole and would not be subject to the requirements of the PRLA.

Accordingly, Stark voluntarily dismissed his first action, without prejudice. This was on May 7, 2018. On May 9, 2018, a warrant was issued for Stark's arrest because he had quit going to probation appointments and quit charging his ankle bracelet. On June 2nd, 2016, Stark was arrested following a foot chase through the ravines and hills of West Keokuk on the May 9, 2016 warrant and remained a prisoner to and including June 28th, 2018, when he filed the present action.

## SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate when the moving party shows there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law. F.R.C.P. 56 (a). The standard and procedure for determining the motion are found at F.R.C.P. 56 (c). The Court is given broad discretion to review materials available in the record, whether cited or not, and can, on notice, grant the motion on grounds not raised by a party. F.R.C.P. 56 (c) and (j).

The purpose of a properly supported motion for summary judgment is to isolate and then terminate claims and defenses that are factually unsupported. Celotex Corp v. Catrett, 477 US 317, 327, 10 GS.CT. 2548, 2554, 91L. Ed. 2d 265 (1986).

## DISCUSSION

I. STARK FAILED TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES PRIOR TO BRINGING THAT PART OF HIS COMPLAINT BASED ON THE CONDITIONS OF HIS IMPRISONMENT AT THE LEE COUNTY CORRECTIONAL CENTER ON OR ABOUT JUNE 29-30, 2016.

Stark pleads in his action that he had exhausted available administrative remedies. (Complaint ¶30) In his response to request for admission no. 2 however Stark clearly claims the administrative remedy was not made available to him by correctional officers. Defendant contends Stark cannot have it both ways-one cannot exhaust remedies not made available.

Nothing in this record suggest the Inmate Grievance Program was followed through completion of its various steps. Stark's claim is "unavailability of remedy", not "exhaustion of remedies". There is no indication of any administrative decision on the merits of Stark's complaint which must be the basis of an exhaustion claim.

One thing is abundantly clear "The Prison Litigation Reform Act of 1995" (PLRA) mandates that an inmate exhaust "such administrative remedies are available" before bringing suit to challenge prison conditions. Ross v. Blake 136 S.Ct.1850, 1855 (2016). A remedy is available if the grievance procedures are capable of use to obtain some relief for the action complained of. *Id* at 1859.

In Ross the court cited three kinds of administrative remedies that could be considered unavailable. These include 1) the administrative procedure operates as a dead end *Id*. p. 859; 2) it is a scheme so opaque that it is incapable of practical use *Id*. p. 859 and 3) when prison administrators thwart inmate efforts to take advantage of a grievance process through machination, misrepresentation or intimidation. *Id*. p. 860. In the instant case, Stark's own testimony refutes both circumstances one and two. Stark has successfully used this process and has a reasonably clear understanding of how it works, by his own admission.

Stark's response to request for admission no. 2 makes it evident that it is his contention that the Lee County Inmate Grievance Program was unavailable to him because acts by Lee County officers. It is equally clear however that Stark is offering an explanation that applies to administrative remedies that he claims were not available to him prior to his January 28, 2018 action. Defendants contend this is irrelevant to question now at bar.. Stark dismissed his prior action with no decision on the merits of any issue. The issue at hand now is whether an

administrative remedy was available to Stark prior to June 28, 2018- the date this action was filed.

On June 28, 2018 Stark was represented by legal counsel concerning these very matters. During his arrest on June 2, 2016 he makes it known he is represented by a "federal lawyer" and that he knows his rights better than the police. He was personally familiar with grievance process, know how it worked and had used it successfully. He was not in custody of Lee County Correctional Center, but at IMCC Oakdale, well removed from and possible intimidation by Lee County officers.

There is no reason in the world why Stark or his counsel could not have utilized the Lee County Inmate Grievance Program between June 2, 2018 when Stark once again achieved prisoner status and June 28, 2018 when he commenced this action. That administrative remedy remains available at this time.

When all is said and done, there are three critical material facts which are dispositive in this case. First, Jaymes Stark was a "prisoner" when he filed his present civil rights action complaint about the conditions of his imprisonment in June 2016. Second, that as of June 28, 2018 there was an available administrative grievance process to address many of the concerns raised in Stark's Petition and third, Stark has not exhausted this available remedy.

 II. COUNT III OF STARK'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS FRIVILOUS, MALICIOUS AND FAILS TO STATE A CLAIM UPON WHICH RELEIF CAN BE GRANTED

Count III of Stark's Complaint alleges a conspiracy by correctional officers to deprive him of free speech. He disclosed the basis of the claim at pp. 51-53. Most particularly at pp 52-53 with the following:

```
17   Q      Is that then—anything else you can tell me about
18   this claim that these folks were conspiring to deprive you of
19   your free speech?
20   A      Because I asked to make phone calls over and over,
21   and, you know, I might have mentioned that I'm going to go to
22   the newspaper or I'm calling the news, and that's when they
23   was like, "Well, you're not calling anybody, how about that."
24   Q      What are the phone rules use—phone use rules at
25   this jail?

1    A      If you've got money on your account, you can make
2    phone calls at any time.
3    Q      Did you have money on your account?
4    A      No. They're 50 cents a minute. You get like legal
5    calls, you can call from the desk, from the bubble. You can
6    get legal calls.
```

The Court sets a high bar for "frivolous" under the PRLA; a claim must rely upon "an indisputable meritless legal theory or a clearly baseless, or fantastic or delusional factual scenario." Mitchell v. Horn 318 F3d 523, 530 (3rd Cir. 2003). Stark's free speech claim meets or exceeds this threshold (Although less ridiculous than his conspiracy allegation in Count IV). In any event, the corrections officers are entitled to qualified immunity because Stark has no clearly established constitutional right to free phone calls.

### III. DEPUTY SPROUL IS ENTITLED TO QUALIFY IMMUNITY

The doctrine of qualified immunity protects government officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v Fitzgerald, 457 U.S. 800, 818 (1982). It balances two important interests – the need to have public officers accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction and liability when they perform their duties responsibly. Pearson v Callahan, 129 S.Ct. 808, 816 (2009). The protection of qualified immunity applies regardless of whether the government

officials error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v Ramirez, 540 U.S, 551, 567 (2004).

Although Counts II is couched in terms of a Fourth Amendment "further seizure," and Count III "cruel and unusual punishment" the factual circumstances of each claim are the same and Deputy Sproul asserts that the analysis of his liability would be the same as a Fourteenth Amendment Substantive due process claim. "Qualified Immunity attaches when an official's conduct 'does not violate clearly statutory or constitutional rights of which a reasonable would have known'" White v Pauly 137 S.Ct. 548, 551 (2017) (citing *Mullenix v. Luna,* 136 S. Ct. 305, 307 (2015)). Both White and Mullenix involved a novel Fourth Amendment claims. In White *Id*. at 552, the Supreme Court noted that the Court of Appeals "failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment." Citing *Anderson v. Creighton,*107 S. Ct 3034 (1987) the Court observed "Otherwise,"[p]laintiffs would be able to convert a rule of qualified immunity---into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." White v Pauly 137 S.Ct. 548, 551 (2017)

Turning to analysis of Sproul's assertion of qualified immunity regardless of the specific constitutional theory, Sproul contends that County of Sacramento v. Lewis, 118 S. Ct. 1708 (1998) offers clear guidance. Lewis involved the death of a motorcycle passenger during a high-speed chase. Id. 1710. The liability of the officer was analyzed as a violation of substantive due process under the Fourteenth Amendment. *Id*. p. 1714. The court noted however that Eighth Amendment Claims are subject to similar analysis, the standard being "deliberate indifference". See Whitley v. Albers, 106 S. Ct. 1078 (1986). When the court noted at 1088:

> "Because this case involves prison inmates rather than pretrial detainees or persons enjoying unrestricted liberty we imply nothing as to the proper answer to that question outside the prison security context by holding, as we do, that in these circumstances the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause."

Going back to *Lewis*, The Court made the following analogy:

> "We accordingly held that a much higher standard of fault than deliberate indifference has to be shown for officer liability in a prison riot. In those circumstances, liability should turn on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." (internal quotation marks omitted). The analogy to sudden police chases (under the Due Process Clause) would be hard to avoid.
> 	Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made "in haste, under pressure, and frequently without the luxury of a second chance." ("[P]olice officers are often forced to make split-second judgments —in circumstances that are tense, uncertain, and rapidly evolving"). A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.
> 	To recognize a substantive due process violation in these circumstances when only midlevel fault has been shown would be to forget that liability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations."

Deputy Sproul was confronted with the need for action with competing duties and obligations.

The Eight Circuit has applied the <u>Lewis</u> Analysis in non-traffic chase cases, including <u>Neal v. St. Louis County Board of Police</u>, 217 F. 3d 955 at 958:

> "In situations where a state actor is afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action, the chosen action will be deemed "conscience shocking" if the action was taken with "deliberate indifference". However, in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation, a state actor's action will shock the conscience only if the actor intended to cause harm. In the latter situations, as a practical matter, state actors do not have time to engage in actual deliberation. Thus, in these types of situations, the Supreme Court has recognized that liability "turn[s] on whether force was applied in a good faith effort ... or maliciously and sadistically for the very purpose of causing harm." *Id.* (holding that an officer's high-speed chase with no intent to harm suspects physically or worsen their legal plight does not give rise to liability under the Fourteenth Amendment) (internal citation omitted)."

In the instant case Sproul did not respond to the scene with the intent to engage the suspect. He was confronted with a fluid and dynamic situation where an armed robber might envade capture. His decision to follow the suspect with Stark in the vehicle does not shock the conscience and was not done to harm or injure Stark.

As to the seat belt issue, such is not a clearly established constitutional right in the Eighth Circuit, Spencer v. Knapheide Truck Equipment Co. 183 F. 3d 902, (1999) such failure can constitute an Eighth Amendment violation under certain circumstances. Brown v. Fortner, 518 F. 3d 552 (2008), which included reckless driving.. *Id* p. 560. In this case Sproul did not drive "reckless." He used reasonable and necessary envasive action to avoid injury to himself and Stark.

Deputy Sproul is entitled to qualified immunity and summary judgment.

## IV. STARK PRESENTS NO EVIDENCE OF A CONSPIRACY TO ESTBLISH OR CAUSE STARK TO VIOLATE HIS PAROLE

This Title 42 Section 1985 conspiracy claim of Stark is wholly without merit. Stark's parole was revoked because he quit reporting to his parole officer and failed to charge his ankle bracelet. Once again, it seems evident Stark has no clearly established constitutional right to remain on parole while he blatantly disregards the rule. Stark admitted at his deposition that he had no evidence of any conspiracy.

## V. LEE COUNTY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE NO EMPLOYEE OF LEE COUNTY IS LIABLE TO STARK

Stark also insists Lee County is responsible for the alleged unconstitutional acts of Deputy Sproul and the jail staff. Before a municipality can be held liable, however, 'there must be an unconstitutional act by a municipal employee.' Webb v. City of Maplewood, 889 F.3d 483, 487 (8th Cir. 2018) (quoting *Russell v. Hennepin Cty.*, 420 F.3d 841, 846 (8th Cir. 2005)). But "there 'need not be a finding that a municipal employee is liable in his or her individual capacity'" before liability can attach to the municipality. *Id.* (quoting *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009)).

## CONCLUSION

Summary Judgment is appropriate when the undisputed facts establish as a matter of law that the moving party is entitled to judgment. In this case, as to Counts I, II, III and IV, the Plaintiff put forth no facts upon which a civil rights violation can be shown by any defendant.

As to the State negligence claim, the Court should decline to continue jurisdiction of the matter.

LEE COUNTY, STEVE SPROUL, JEREMY
HAMILTON, ZACHARY COPPAGE
DUSTIN YOUNG ,CLINT RAY

_/s/ Steven E. Ort_

Steven E. Ort
BELL, ORT & LIECHTY
P.O. Box 143
New London, IA 52645
Ph:(319) 367-2251 Fax:  (319) 367-7745
Email: bellortliechtylaw@gmail.com
ATTORNEY FOR DEFENDANTS