IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| JAYMES ANTHONY STARK, | ) | Case No. 3:18-cv-00069-RGE-CFB |
| Plaintiff, | ) | |
| vs. | ) | **PLAINTIFF'S BRIEF IN SUPPORT OF RESISTANCE TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT** |
| LEE COUNTY, IOWA, STEVE SPROUL, JEREMY HAMILTON, ZACHARY COPPAGE, DUSTIN YOUNG, C.J. WRAY; AND THE STATE OF IOWA | ) | |
| Defendants. | ) | |

Comes now the Plaintiff, Jaymes Anthony Stark, and submits this Brief in support of his Resistance to the Defendant's Motion for Summary Judgment, as follows:

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………… Page 2

STARK'S STATEMENT OF ADDITONAL MATERIAL FACTS
PRECLUDING SUMMARY JUDGEMENT………..………………………………… Page 3

ARGUMENT………………………………………………………………………… Page 6

I. SUMMARY JUDGMENT STANDARD……………………………………. Page 6

II. ADMINISTRATIVE REMEDIES WERE NOT AVAILABLE TO STARK……... Page 7

III. COUNT III OF STARK'S COMPLAINT – FREE SPEECH –
   SHOULD NOT BE DISMISSED……………………………………..………… Page 9

IV. DEFENDANT SPROUL IS NOT ENTITLED
   TO QUALIFIED IMMUNITY………………………………………………… Page 12

V. STARK CONCEDES COUNT IV – CONSPIRACY TO CAUSE
   STARK TO VIOLATE PAROLE – SHOULD BE DISMISSED…………………Page 16

VI.      LEE COUNTY IS NOT ENTITLED TO SUMMARY JUDGEMENT……………Page 16

CONCLUSION…………………………………………………………………..Page 16

**INTRODUCTION**

Count I of Stark's Complaint is an improper seizure claim against Defendants Sproul and Lee County for forcing him to be involved in a dangerous chase against his will under the 4th Amendment to the U.S. Constitution and Article 1, Section Eight of the Iowa Constitution. Plaintiff contends that forcing him to partake in a dangerous chase while already in custody constituted a separate seizure of his person. Plaintiff concedes that he has not been able to locate precedent to support the proposition that an individual already in custody may be seized for other purposes. Count II is in the alternative to Count I alleging an 8th Amendment violation for forcing Stark to be involved in a dangerous and high-speed chase against his will while shackled, handcuffed, unable to brace himself and without a seat and/or shoulder belt. Support for this proposition is plentiful and may be found under Section IV below.

Count III is for violation of Stark's freedom of speech based upon Defendants attempt to keep him from publicizing his involvement in the bank robbery incident under the First Amendment to the U.S. Constitution and Article 1, Section Seven of the Iowa Constitution. That issue is discussed in section III below. It should be noted that the Defendants' Motion for Summary Judgment does not include claims made by Stark under the Iowa Constitution. See Complaint Counts I, II and III. Since *Godfrey v. State*, 898 N.W.2d 844, 880 (Iowa 2017), private rights of action under the Iowa Constitution have been recognized. Further, the two *Baldwin* decisions by the Iowa Supreme Court have made it clear that Iowa is not going to follow the federal lead regarding qualified immunity and other related issues in Iowa Constitutional cases. See

*Baldwin v. City of Estherville*, 915 N.W.2d 259 (Iowa 2018) and *Baldwin v. City of Estherville*, Iowa Supreme Court No.18-1856, issued June 14, 2019.

Count IV of Stark's complaint involves an alleged conspiracy by correctional officers to cause him to violate his parole. Stark concedes that Count IV should be dismissed for lack of support in the record. Count V alleges a common law negligence claim against all Defendants. Count V is not discussed in this resistance since the Defendants did not seek summary judgment on that claim. Count VI involves claims against the State of Iowa and is not part of the pending motion for summary judgment.

## STARK'S STATEMENT OF ADDITIONAL MATERIAL FACTS PRECLUDING SUMMARY JUDGEMENT

On June 29, 2016, Stark was an inmate at the Lee County Jail and was being transported to a medical appointment by Defendant Sproul. Complaint ¶ 13, admitted. Stark was in the back seat of Sproul's cruiser in shackles, belly chain and handcuffs which caused him to not be able to move that well. *Pl. App. P. 39* (Stark Dep. 12-13). Defendant Sproul did not put Stark in a seat and/or shoulder belt. Complaint ¶ 14, admitted and *Pl. App. p. 29.* (Sproul Dep. 10). While Defendant Sproul was returning Stark to the jail a radio call went out for a shots fired bank robbery. *Pl. App. p. 43.* (Stark Dep. 34-35). Defendant Sproul decided to respond to the call with Stark in the backseat of his cruiser. *Pl. App. p. 43.* (Stark Dep. 34-35). Defendant Sproul made the decision to put Stark into harm's way knowing full well that because of the chains, shackles and cuffs Stark was unable to brace himself and his mobility was limited. *Pl. App. pp. 29-30.* (Sproul Dep. 21-22). A reasonable inference Sproul should have drawn from the situation is that Stark would certainly bounce around in the back seat of Sproul's cruiser and be injured, if not shot.

Deposition Exhibit 15 is an overhead of the scene at the bank with markings made by Defendant Sproul during his deposition. *Pl. App. pp. 31-32.* (Sproul Dep. 55-57). The red circle is where Defendant Sproul chose to initially park which is well within shooting range of the bank robbery suspect inside. *Id.* The red line from the bank to point XA is the route the suspect took on foot from exiting the bank to the point where he stopped and fired shots at Sproul's cruiser with Stark in the back seat. *Pl. App. pp. 33-34.* (Sproul Dep. 60-62). The green line is the route Sproul took following the suspect over a curb and into an open rough field. *Pl. App. p. 33.* (Sproul Dep. 61). At the time the shots were fired Defendant Sproul took a sharp right turn, sped up and left the area along the route shown on Deposition Exhibit 15. *Pl. App. pp. 33-34.* (Sproul Dep. 62). The green circle shows the location of Sproul's cruiser at the time the suspect fired his gun at the cruiser. *Pl. App. pp. 33-34.* (Sproul Dep. 62). When Sproul took the hard right turn he "hit the gas." *Pl. App. p. 35.* (Sproul Dep. 70). Before shots were fired Sproul was chasing the suspect going approximately 20-25 mph across the open field. *Pl. App. p. 31.* (Sproul Dep 47-48). When Sproul hit the gas his speed across the open field increased to 35 mph, but he is not sure if he got up to 40. *Pl. App. p. 35.* (Sproul Dep. 70).

The open field is essentially level, but "not maintained by any stretch." *Pl. App. pp. 34-35.* (Sproul Dep. 69). The open field includes ruts and undulations. See pictures 1, 2 and 3 of the open field exchanged as part of discovery. *Pl. App. pp. 58-62.* (Affidavit of Counsel with attached pictures). Picture 1 shows the entrance to the open field used by Defendant Sproul. *Id.* Pictures 2 and 3 show the ruts and undulations Defendant Sproul drove over at up to 40 mph when accelerating to "get the hell out of Dodge" when shots were fired. *Id.* and *Pl. App. pp. 34-35.* (Sproul Dep. 69-70). Sproul agreed that given the route he took and the condition of the field that

Stark could have been injured while riding handcuffed, shackled and unbelted in the back seat. *Pl. App. p. 35.* (Sproul Dep. 77).

Stark was unable to lay down on the floor when the shots were fired, but he did flop to the side on the seat. *Pl. App. p. 44.* (Stark Dep. 37). Stark describe the encounter with the robbery suspect as Sproul "gunned the vehicle over the curb, like floored it, ramped the curb, and then we took off straight after the guy. . . it was like he was going to run [the suspect] over." *Pl. App. p. 36.* (Stark Dep. 36). Defendant Sproul returned to the scene of the shooting over Stark's objections. *Pl. App. p. 45.* (Stark Dep. 38). Stark then saw "cops run up, flip the dude over because he was laying on his stomach. They start performing CPR. I see the guy twitching, convulsing. A lot of blood was coming out of his mouth. Every time they would push on his chest, like a whole bunch of blood would come out of his mouth." *Pl. App. p. 45.* (Stark Dep. 38-39).

Stark described his medical condition following the subject matter incident, as follows:

Q. And do you recall what was examined the first day and what was examined the second day as far as your body is concerned, the complaints you had?

A. The first day they took me in for a lower back x-ray. I got an actual x-ray on my back. They said there was no breaks or fractures or anything. It was muscle spasms is what they said. So, I went back to the jail. The next day I went and got my neck examined because my neck was on fire when I woke up. I could barely move it.

Q. That was when you woke up the next morning?

A. Yeah. It started hurting in the evening, but I think my back was just more painful at the moment and just -- I just didn't think about my neck as much.

Q. Until the next morning?

A. Yeah. The next morning I knew something was bad.

*Pl. App. pp. 41-42.* (Stark Dep. 28). Due to his incarceration it took some time for Stark to get an MRI, but the orthopedic surgeon who ultimately reviewed the MRI told him, "[t]his is serious. Look, it's right here. You can tell this is where all your injuries and pain's coming from. I'm going

5

to refer you to a spinal surgeon." *Pl. App. p. 48.* (Stark Dep. 55).

Stark used to be in good shape, but now cannot even walk five laps, can't focus to read, is stuck in bed on some days and has throbbing pressure in his neck at all times. *Pl. App. p. 46.* (Stark Dep. 46-47). Stark understands that he is finally going to get the treatment he needs, "a double discectomy and triple fusion . . . remove and replace two discs between C4 and C5, and . . . fuse C4 through C7." *Pl App. p. 46.* (Stark Dep. 48). Stark is currently taking Gabapentin for pain 1,200 milligrams three times a day; Naproxen for pain two times a day; Buspirone for anxiety two times a day; and Prazosin for nightmares "for like PTSD." *Pl. App. pp. 48-49.* (Stark Dep. 56).

The evening of the subject matter incident five Lee County Deputies entered Stark's cell and attempted to intimidate him. *Pl. App. pp. 47-48.* (Stark Dep. 50-51). The five jailers included Defendants Coppage, Wray, Young, Hamelton and one non-defendant unknown until the time of depositions, jailer Howard. *Pl. App. p. 23.* (Coppage Dep. 17). The Defendant deputies told Stark, referring to the bank robbery, "[t]his is none of your business, you don't need to talk about it to nobody, anything that you seen, you know, keep to yourself." *Pl. App. pp. 47-48.* (Stark Dep. 50-51). The Deputies threatened Stark by putting him in handcuffs, slamming him up against a wall and pointing a taser at him. *Id.* Stark admitted he was making a bit of a ruckus, but noted "typically that's not the response for somebody making a ruckus in the cell." *Pl. App. p. 52.* (Stark Dep. 52).

The Defendant jail personnel admitted that Stark had never struck or assaulted a correctional officer. *Pl. App. pp. 55; 23; 25; 53.* (Young Dep. 12-13; Coppage Dep. 9; Hamelton Dep. 9-10; and Wray Dep. 15). The Defendant jailers did not have a good explanation for why five jailers were necessary to respond to Stark just making a ruckus in his cell. *Pl. App. pp. 55;53.*

(Young Dep. 7; Wray Dep. 13).  The "officer safety" cliché, if true, would always require five officers to respond to any inmate making any sort of ruckus.

## ARGUMENT

### I. SUMMARY JUDGMENT STANDARD

A Motion for Summary Judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the Court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir. 1986).  "To preclude the entry of Summary Judgment, the non-movant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  Although "direct proof is not required to create a jury question . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir. 1985) (quoting *Impro Prod., Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir. 1983)). The non-moving party is entitled to all reasonable inferences that can be drawn from the evidence without resort to speculation. *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1110 (8th Cir. 2001).

### II. ADMINISTRATIVE REMEDIES WERE NOT AVAILABLE TO STARK

The Defendants may have had a grievance procedure in place as of June 29, 2019, but it was not made available to Stark.  *See Def. App. 1, Response No. 2* (". . . I was never provided a copy of this form despite repeated requests to file a grievance.  All my requests were ignored and I was retaliated against for making the request.  I submitted a letter regarding my complaints to the Lee County Sheriff.  I contacted the ombudsman about my complaints and then was transferred to

a different jail and put in solitary for 4 to 6 months where I had no access to a grievance process.").

Just because Stark may have attempted to use the informal grievance process on prior occasions does not mean the Defendants made that process available to him after he was injured in the bank robbery incident. Stark noted that his "usual" experience with any written grievance in Lee County was that it was "tossed in the trash." *Def. App. 24*. Stark did on prior occasions fill out a "paper" he was given, but was completely unfamiliar with the grievance form submitted by the Defense in this case. *Id*. and Response to Request for Admission No. 3. *Def. App. 1-2*.

Under the Prison Litigation Reform Act "[i]nmates are excused from exhausting remedies prior to asserting § 1983 claims when officials have prevented prisoners from utilizing the procedures, or when officials themselves have failed to comply with the grievance procedures." *Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015). *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001), is right on point finding that administrative remedies are not "available" where prison officials failed to respond to inmate's requests for grievance forms. In this case it is undisputed that Stark requested a grievance form and was not provided one. *Def. App. 1, Response No. 2*. Stark even went so far as to seek a remedy from the Iowa Ombudsman. *Id*. The *Miller* court specifically held, "[w]e believe that a remedy that prison officials prevent a prisoner from utilizing is not an 'available' remedy under § 1977e(a)." See also *Porter* at 452.

The Defendants' argument that Stark or his counsel should have filed a grievance at some later date, even though Stark was denied the opportunity to file a grievance at the time of his injury, is completely without merit. The Defendants cite no authority for the proposition that Plaintiff's must continue to attempt to file grievances even after being initially denied the opportunity to do so, or face dismissal under the PLRA. See *Def. MSJ Brief*, p. 6. In *Foulk v. Charrier*, 262 F.3d 687 (8th Cir. 2001), the Eighth Circuit held to the contrary, "[plaintiff's] testimony suggests that

he had exhausted his available administrative remedies because once, [the prison] failed to respond to his IRR, no further administrative remedies were 'available' to him."

It must be noted that pursuant to the U.S. Supreme Court, "[n]onexhaustion is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 211–12 (2007). The Defense in this case has not provided any evidence to support the claim that Stark did not request to file an administrative grievance over the bank robbery incident. The Defense also presented no evidence to dispute Stark's claim that he contacted the Ombudsman about the bank robbery incident. The Defense has, therefore, completely failed to fulfill its burden of proving the absence of exhaustion. In addition, the Defense has made no argument that the PLRA applies to claims made under the Iowa Constitution.

The Defendants' Motion for Summary Judgment for failing to exhaust PLRA administrative remedies should be denied. In the alternative, should the court find a failure to exhaust administrative remedies, then Stark should be granted a stay and leave of court to file a grievance with Lee County.

### III. COUNT III OF STARK'S COMPLAINT – FREE SPEECH – SHOULD NOT BE DISMISSED

"A citizen's right to exercise First Amendment freedoms 'without facing retaliation from government officials is clearly established.'" *Baribeau v. City of Minneapolis*, 596 F.3d 465, 480-81 (8th Cir. 2010) (citing *Kilpatrick v. King,* 499 F.3d 759, 767 (8th Cir.2007)). Accordingly, the "only question" is whether a reasonable jury could find that the Defendant Officers violated that right when they handcuffed Stark, threw him up against the wall, pointed a taser at him, referred to the bank robbery and said, "[t]his is none of your business, you don't need to talk about it to

9

nobody, anything that you seen, you know, keep to yourself." *Pl. App. pp. 47-48.* (Stark Dep. 50-51).

"To prevail in an action for First Amendment retaliation, 'plaintiff must show a causal connection between a defendant's retaliatory animus and [plaintiff's] subsequent injury.'" *Id.* at 481 (quoting *Osborne v. Grussing,* 477 F.3d 1002, 1005 (8th Cir.2007)). A plaintiff must establish three elements: (1) plaintiff engaged in constitutionally protected activity; (2) the officers' action caused plaintiff injury which would chill a person of ordinary firmness from continuing that activity; and (3) the adverse action was motivated in part by plaintiff's exercise of his First Amendment rights. *Carroll v. Pfeffer*, 262 F.3d 847, 850 (8th Cir. 2001); see also *Baribeau*, 596 F.3d at 481. Regarding the "motivation" element, "[r]etaliation need not have been the sole motive, but it must have been a 'substantial factor' in" the [officer's] decision. . ." *Id.* quoting *Kilpatrick,* 499 F.3d at 767; *see also Wishnatsky v. Rovner,* 433 F.3d 608, 613 (8th Cir.2006)).

While the majority of First Amendment retaliation cases arise in the context of public employment, the Eighth Circuit has found that complaints about treatment by corrections officers constitute protected First Amendment activity. In *Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009), prison inmate Haynes filed a prison grievance against corrections officer Stephenson for using profane and abusive language toward Haynes. After Stephenson learned of the prison grievance, Stephenson filed a retaliatory false disciplinary report against Haynes, which resulted in Haynes being transferred to a disciplinary unit and losing certain prisoner privileges. In considering whether Haynes complaint about Stephenson using profane and abusive language constituted protected activity, the Eighth Circuit held, "[i]t is undisputed that Haynes satisfied the first element of the prima facie case because he exercised a constitutionally protected right by filing the grievance against Stephenson. 'The filing of a prison grievance, like the filing of an

inmate lawsuit, is protected First Amendment activity.'" *Id*. at 1155 – 56 (quoting *Lewis v. Jacks,* 486 F.3d 1025, 1029 (8th Cir. 2007)); *see also Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (finding that prisoner's filing of a grievance against corrections officer who allegedly filed false disciplinary report and threatened inmate's life constituted protected speech); *Brown v. Watson*, CIV. 10-3080, 2013 WL 1003669 (W.D. Ark. Feb. 25, 2013) *report and recommendation adopted*, 10-CV-3080, 2013 WL 1002595 (W.D. Ark. 2013) (finding that parolee's action of filing grievances against parole officer constituted protected speech).

Courts have noted that "[s]tatements revealing official impropriety usually involve matters of public concern." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007). Stark, like the inmates in the above-cited cases, was airing complaints and threatening to go to the media about Sproul's unlawful conduct in placing Stark's life and health in jeopardy during the bank robbery incident. Accordingly, Stark's complaints were about a matter of public concern, and he meets the first element of his prima *facie* case.

With respect to the second element, there is no question that Stark suffered harm which would chill a person of ordinary firmness from continuing the activity of airing such complaints. Stark was handcuffed, slammed up against a wall and threatened with a taser. In addition, he was denied access to grievance forms that would have allowed him to pursue a claim against Sproul administratively. The Eighth Circuit has held that much less personal, extensive, or abusive harm satisfies the harm element. *See, e.g., Lewis,* 486 F.3d at 1029 (finding that "[r]etaliatory action that worsens an inmate's working conditions can be sufficiently adverse to be actionable under § 1983"); *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) (retaliatory issuance of parking tickets found sufficient to support First Amendment retaliation claim); *see also Dorr v. Weber*, 741 F. Supp. 2d 1010, 1018 (N.D. Iowa 2010) ("The court also finds that withholding a

11

concealed weapons permit from an applicant would chill the speech of a person of ordinary firmness.").

With respect to the causation element of the *prima facie* case, sufficient evidence exists to generate a jury question regarding the Defendant Officers' motive for attempting to intimidate Stark. One factor courts consider in determining whether a jury question has been generated on the causation element is the temporal proximity between the First Amendment activity and the adverse action. See, *e.g*., Lewis, 486 F.3d at 1029 (discussing the lack of a temporal connection); *Haynes*, 588 F.3d at 1156 – 57 (affirming finding of retaliatory motive and noting, "Stephenson nevertheless filed the disciplinary report *almost immediately after* learning of Haynes's grievance.") (emphasis added). In the present case, Stark was cuffed, slammed against a wall, threatened with a taser and denied access to the grievance procedure on the same day he threatened to make public Sproul's wrongful conduct during the bank robbery incident. Accordingly, the proximity in time between Stark's protected activity and the adverse actions supports a finding of retaliatory motive.

Moreover, there exists sufficient evidence to generate a question of fact regarding whether the proffered justification for using five officers to respond to a cell ruckus is false. *See, e.g., Morris v. City of Chillicothe*, 512 F.3d 1013, 1019 (8th Cir. 2008) (discussing pretext in the context of a public employment First Amendment retaliation claim). As set forth above, while the Defendant officers claimed they needed five officers to respond to Stark's minor outburst, there is evidence that demonstrate that this was an outsized response to the minor threat posed and designed to intimidate Stark to not discuss his involvement in the bank robbery incident. Typically, only one or two officers need to respond to a ruckus in a cell and Stark had absolutely no history of assaulting correctional officers. *Pl. App. p. 48.* (Stark Dep. 52) and *Pl. App. pp. 55;*

*23; 25; and 53*. (Young Dep. 12-13; Coppage Dep. 9; Hamelton Dep. 9-10; and Wray Dep. 15). The Defendants proffered explanation that it took five Jailers to respond to Stark kicking his door for "officer safety" is without merit. *Pl. App. p. 53.* (Wray Dep. 13) If that were true, then it would take five Jailers to "safely" respond to any complaint from any detainee.

There is also direct evidence on the causation issue. Stark was specifically told to keep quiet about his involvement with the bank robbery incident. Stark's First Amendment retaliation claim is valid and the Defendants' Motion for Summary Judgment should be denied.

## IV. DEFENDANT SPROUL IS NOT ENTITLED TO QUALIFIED IMMUNITY

Under the U.S. Constitution "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances the "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation marks and citations omitted).

The qualified immunity analysis is quite different under the Iowa Constitution. In *Baldwin I* the Iowa Supreme Court held, "[b]ecause the question is one of immunity, the burden of proof should be on the defendant... Accordingly, to be entitled to qualified immunity a defendant must plead and prove as an affirmative defense that she or he exercised all due care to comply with the law." Stark notes that, given the facts of this case, no reasonable jury could conclude that

13

Defendant Sproul "exercised all due care to comply with the law," much less that a jury question has not been generated on that issue overcoming any qualified immunity claim.

The U.S. Supreme Court has established a two-step analysis for qualified immunity claims under federal law. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1991)); see also *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). If the court determines that no right has been violated, there is no need for further inquiry "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998)

The right of prisoners to safe travel, including the use of seat belts has been well established. See *Brown v. Fortner*, 518 F.3d 552, 558-59 (8th Cir. 2008) ("This court has previously held that failure to provide a seatbelt to a prisoner while driving in a manner that puts the prisoner at risk of injury can constitute deliberate indifference to a prisoner's safety and health. *[Brown v.] Morgan*, 39 F.3d 1184, [1994 WL 610993, *1 (8th Cir. 1994)(unpublished) (*per curiam*). Under the Eighth Circuit analysis, "[i]f the facts as alleged by Brown establish that 1) there was a substantial risk of harm to Brown and 2) [Defendants] knew of and disregarded the substantial risk to Brown, then their conduct demonstrated a deliberate indifference to Brown's safety and violated Brown's Eighth Amendment rights.").

In this case the evidence establishes that Defendant Sproul intentionally put Stark in "substantial risk of harm" by driving over a curb and thru a rut filled field with Stark handcuffed, shackled and unbelted in the back seat, not to mention while being shot at. Defendant Sproul

completely disregarded the substantial risk of harm to Stark. See the report of Stark's police practices expert opining "Sproul was negligent by failing to properly restrain Jaymes Stark in the back seat of his cruiser by using a lap or shoulder seat belt and, was negligent in his obligation to make sure Stark was safe, secure and properly cared for by recklessly engaging in a pursuit of a bank robbery suspect." *Pl. App. pp. 56-58.*

In *Brown v. Morgan*, 39 F.3d 1184, 1994 WL 610993 (8th Cir. 1994), the plaintiff was involved in an accident while a passenger in a car driven by a county deputy. The deputy refused to allow him to wear his seatbelt and drove at a high rate of speed in bad weather, refusing to slow down despite the passenger's pleas for him to do so. The court held, "[w]hile a constitutional claim cannot be based on mere negligence . . . when prison officials intentionally place prisoners in dangerous situations or manifest deliberate indifference for their safety, the Eighth Amendment is violated." See also, *Fruit v. Norris*, 905 F.2d 1147, 1150 (8th Cir. 1990) (Prison officials violate the Eighth Amendment when they intentionally place prisoners in dangerous situations or manifest deliberate indifference for their safety). That is exactly what Defendant Sproul did to Stark in this case, "intentionally placing him in a dangerous situation" without any regard for Stark's safety.

The U.S. Supreme Court has interpreted the Eighth Amendment's prohibition against cruel and unusual punishment to include a right to safe and humane conditions of confinement. See *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). A denial of safe and humane conditions can result from an officer's deliberate indifference to a prisoner's safety. See *Fruit v. Norris*, 905 F.2d 1147, 1150 (8th Cir. 1990). In *Brown v. Fortner*, 518 F.3d 552, 556 (8th Cir. 2008), the Eighth Circuit noted that "[w]hen seatbelts are available, transporting inmates without securing their seatbelts violates MDOC policy. There is no question that it was clearly established that subjecting inmates to unreasonable and substantial risk of harm by

15

transporting them unbelted and while driving recklessly constituted a constitutional violation. See *Farmer*, 511 U.S. at 847; Fruit, 905 F.2d at 1150; *Brown v. Morgan* (1994); and *Brown v. Fortner* (2008).

The Defense argues that Sproul "did not respond to the scene with the intent to engage the suspect." Def. MSJ Brief, p. 10. In *Graham v. Connor*, 490 U.S. 386, 397 (1989), the U.S. Supreme Court held, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. It does not matter what Defendant Sproul intended. Only the facts of what he actually did are to be assessed.

The Defendants motion for summary judgment on qualified immunity grounds under federal law should be denied for the reasons stated above. The Defendants failed to move for summary judgment under Stark's Iowa Constitutional claims. As noted above, on the substance of Stark's Iowa Constitutional claims, any perceived motion for summary judgment on qualified immunity grounds should also be denied.

### V. STARK CONCEDES COUNT IV – CONSPIRACY TO CAUSE STARK TO VIOLATE PAROLE – SHOULD BE DISMISSED

Stark concedes that there is insufficient evidence in the record to support his conspiracy to cause him to violate parole claim. Therefore, Stark agrees that Count IV of his complaint should be dismissed.

### VI. LEE COUNTY IS NOT ENTITLED TO SUMMARY JUDGEMENT

Defendant Lee County's summary judgment motion relies on the individual Defendants prevailing on their summary motions. See *MSJ Def. Brief*, p.11. ("Before a municipality can be held liable, however, there must be an unconstitutional act by a municipal employee."). Stark concedes that Lee County may only act thru its agents, and to the extent all the claims made against

all the individual Defendants are dismissed, then the claims made against Lee County should also be dismissed.

## CONCLUSION

For all the reasons stated above, the Defendants' Motion for Summary Judgment, with the exception of dismissal of the conspiracy to cause Stark to violate his parole count, should be denied.

Respectfully submitted,

**DAVE O'BRIEN LAW**
1500 Center Street NE
Cedar Rapids, Iowa 52402
Telephone: (319) 861-3001
Facsimile: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By: /s/ David A. O'Brien
DAVID A. O'BRIEN, AT0005870

**Copy to**:

Steven E. Ort
BELL, ORT & LIECHTY
200 W. Main St., P.O. Box 143
New London, IA 52645
E-Mail: bellortliechtylaw@gmail.com

William A. Hill
Assistant Attorney General
Special Litigation Division
Hoover Building, 2nd Floor
1305 E. Walnut
Des Moines, Iowa 50319
William.Hill@ag.iowa.gov
ATTORNEYS FOR THE STATE OF IOWA

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on the 28th day of August, 2019, by:

___ U.S. Mail / Email      ___ Facsimile
___ Hand Delivered         ___ Certified Mail
___ FedEx/Airborne Express  X  EDMS

Signature: /s/ Julia Daugherty