IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| JAYMES ANTHONY STARK,<br><br>Plaintiff,<br><br>vs.<br><br>LEE COUNTY, IOWA; THE STATE OF IOWA; STEVE SPROUL; JEREMY HAMELTON; ZACHARY COPPAGE; DUSTIN YOUNG AND C.J.WRAY,<br><br>Defendants. | Case No. 3:18-cv-00069-RGE-CFB<br><br>**MEMORANDUM IN SUPPORT OF STATE OF IOWA'S MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE
     GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.   There are No Disputed Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.   The State of Iowa and the Individual Defendants are Entitled to Judgment
          as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          1.   Deliberate Indifference to Serious Medical Need/Delay in Care  . . . . 6

III. THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY  . . . . . . . . 10

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.   **INTRODUCTION**

The Plaintiff, Jaymes Stark, is a former offender in the Iowa Department of Corrections ("IDOC"). On June 29, 2016 Stark was in the custody of the Lee County Sheriff – and was being

transported for a medical appointment in the back of a sheriff's vehicle. State of Iowa's App. 1. While Stark was in the custody of the Sheriff and in the back seat of the vehicle – an unrelated crime was discovered and Stark was in the backseat of the vehicle during a police chase and other law enforcement interactions. Stark alleged that during these events – he injured his neck. The allegations against the State of Iowa are based on the treatment of such an injury – once he was subsequently revoked from parole and he was placed into the IDOC on June 28, 2018 – until his discharge on October 24, 2019.

The allegations against the State of Iowa are based on the claim that once he arrived in the IDOC – two years after the date of the alleged injuries – he did not receive appropriate treatment for his back injuries while in IDOC custody. The State of Iowa asserts that Stark was in the IDOC from June 22, 2018 until his discharge on October 24, 2019. However, during this time fame he had access to medical services and did have his neck condition evaluated and treated by the University of Iowa Hospitals & Clinics ("UIHC"). As a result, of such treatment and evaluations – Stark can not establish deliberate indifference to a serious medical need.

## II. THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE GRANTED.

The standard for granting summary judgment motions is firmly established. Fed. R. Civ. P. 56 provides that summary judgment is proper only if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit, if any, show that there is no genuine issue as to any material fact in that the moving party is entitled to judgment as a matter of law.

*Wabun-Inib v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990) (*citing* Fed. R. Civ. P. 56(c)). A court, when considering a motion for summary judgment, must read all of the facts in a light most favorable to the non-moving party, and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Burke v. Beene*, 948 F.2d 489, 492 (8th Cir. 1991); *Martin v. Conagra, Inc.*, 784 F. Supp. 1394, 1395-96 (S.D. Iowa 1992).

The moving party bears the initial responsibility for informing the court for the basis for the motion and identifying those portions of the record which show a lack of a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A non-moving party is then required under Fed. R. Civ. P. 56(e) to go beyond the pleadings and by affidavits, or by depositions, interrogatories, or admissions, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *Celotex*, 477 U.S. at 324. The necessary proof that the non-moving party must present is "enough evidence so that a reasonable jury could return a verdict for the non-movant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A.   **There are No Disputed Facts.**

The Plaintiff, Jaymes Stark, is a former offender in the IDOC. Defendant State of Iowa's Statement of Undisputed Material Facts, ¶1. Stark brought this action pursuant to 42 U.S.C. § 1983 against the State of Iowa – and also several officials from the Lee County Sheriffs Office (who are represented by separate counsel). *Id.*, ¶2. The action by Stark as they pertain to the State of Iowa are focused on his medical care within the IDOC for a neck injury – that he allegedly suffered while in the custody of the Lee County Sheriff's Office. *Id.*, ¶3. The State of

3

Iowa has denied the allegations of a constitutional violation and raised the defense of qualified immunity. *Id.*, ¶4.

Dr. Jerome Greenfield is employed as the Medical Director for the IDOC. *Id.*, ¶5. As the Medical Director, Dr. Greenfield is responsible for providing medical health, mental health and dentistry services to all incarcerated individuals in the Iowa prison system. *Id.*, ¶6

The services are provided when an offender is first committed to the IDOC – when (male offenders) arrive at the Iowa Medical & Classification Center ("IMCC") where they are evaluated for any and all health concerns. *Id.*, ¶7. Offenders are provided a health screening at IMCC – and after it is completed and a classification decision is made, the offender is topically transferred to a different institution. *Id.*, ¶8. Generally, the medical staff at IMCC – and medical staff at each individual prison where an offender may be sent, can handle all routine medical issues that may impact an offender. *Id.*, ¶9. In the event of a more complex or difficult medical condition an incarcerated individual may be referred to the University of Iowa Hospitals & Clinics ("UIHC") for further evaluation and treatment. *Id.*, ¶10. In such circumstances, UIHC will provide and direct all treatment with regard to the medical condition – and the IDOC will rely on their expertise in addressing a specific condition. *Id.*, ¶11.

Jaymes Stark is a former IDOC offender who was in the IDOC dating back to 2004, but his most recent incarceration included stays from July 1, 2016 until March 14, 2018 and June 22, 2018 until October 24, 2019. *Id.*, ¶12. Dr Greenfield is familiar with the medical treatment of Stark – as he was an offender who was referred to UIHC for further evaluation and treatment of a neck condition. *Id.*, ¶13. Normally, if an offender has a neck condition or problem, it can be

treated at the facility where they are incarcerated as long as the problem is not severe or does not require specialized treatment. *Id.*, ¶14.

In reviewing the medical records of Stark – after he was admitted on June 22, 2018 on his most recent incarceration – Stark indicated ongoing problems with his neck. *Id.*, ¶15. Given the nature of such a complaint, a determination would have been made to send him to UIHC for further evaluation and treatment. *Id.,* ¶16. The records of IDOC indicate that Stark was referred to UIHC (neurosurgery) for evaluation and treatment of his neck/back condition on June 25, 2018 (after Stark was received at IMCC on June 22, 2018). *Id.,* ¶17.

Stark was seen and evaluated by UIHC – Neurosurgery on September 14, 2018. – and results of his previous MRI were examined – and additional testing(CT scan) was completed. *Id.*, ¶18. The plan indicated by UIHC at that time was to refer Stark to the UIHC pain clinic, complete further testing and a follow up appointment in 2 months. *Id.*, ¶19.

On November 9, 2018 Stark was seen a the UIHC pain clinic – and was referred for an epidural steroid injection – and had some medication changes completed. *Id.*, ¶20.

On December 14, 2018 Stark was again seen and evaluated at UIHC – Neurosurgery and the epidural steroid injection was ordered and some medication changes completed. *Id.,* ¶21.

On March 25, 2019 Stark had the epidural injection completed at UIHC – Pain Clinic for his neck condition. *Id.*, ¶22.

On April 11, 2019 – Stark was again referred to UIHC – Neurosurgery for additional evaluation. *Id.*, ¶23. Stark was seen at the UIHC – Neurosurgery on July 23, 2019 – and a follow up MRI was ordered. *Id.,* ¶24.

On July 24, 2019 a referral was written again to UIHC – Neurosurgery. Stark was seen at UIHC on August 13, 2019 – where he had an MRI and was evaluated for surgical intervention – which was approved. *Id.*, ¶25. Stark discharged from prison on October 24, 2019 and no further information is available as to whether the surgery was completed. *Id.*, ¶26.

While Stark was in the custody of the IDOC – his medical care for his back/neck was directed by UIHC. *Id.*, ¶27. The IDOC facilitated him being evaluated and treated at UIHC, but was not involved in the medical decisions related to how such care was to be provided. *Id.*, ¶28. The role of the IDOC is to comply with the scheduling and referral of Stark to the appointments – but, the actual care was dictated by UIHC. *Id.*, ¶29.

      **B.**    **The State of Iowa and the Individual Defendants are Entitled to Judgment as a Matter of Law.**

           **1.**    **Deliberate Indifference to Serious Medical Need/Delay in Care Stemming from the Treatment of a Pre-Existing Neck Injury.**

The only issue raised by Stark is alleged deliberate indifference by the State of Iowa[1] to a serious medical need stemming from the treatment of his neck condition. There is no dispute that Stark had some medical issues stemming from a neck injury prior to entering the IDOC. The question is whether Stark can establish deliberate indifference to a serious medical need stemming from the treatment of such a condition while was in the IDOC.

---

[1] The State of Iowa is not a "person" for purposes of an action brought pursuant to 42 U.S.C. §1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"). As a result they should not be considered a party for the claims under the United States Constitution. To the extent that Stark raised claims under the Iowa Constitution, State of Iowa's App. p. . (ECF No. 1, p. 12, ¶62), there is no well established law defining the contours of such a right under the Iowa Constitution and qualified immunity should be granted. *See generally Baldwin v. City of Estherville*, 929 N.W.2d 691, 696 (Iowa 2019)

The initial question is that the alleged injury to Stark occurred on June 29, 2016. State of Iowa's App. p. 1. Stark was in prison for two separate periods of time following the injury. First, Stark was in prison from July 1, 2016 until he was released to parole on March 14, 2018. *Id*. Second, Stark was in prion from June 22, 2018 until October 24, 2019. *Id.* During both periods of incarceration, Stark claims deliberate indifference to a serious medical need and/or deliberate indifference to a serious medical need for the delay in treatment.

There is no questions that immediately following his admission for the second period on June 22, 2018 — Stark was seen and evaluated for his complaints of a neck injury. Stark was referred to UIHC Neurosurgery on June 25, 2018 – 3 days after entering the IDOC. State of Iowa's App. p. 21. Stark was sent to the UIHC pain clinic, provided medication changes, epidural injection, an additional MRI was provided, he has given a collar to wear to support his neck and after all conservative treatment options were explored. *Id.* Ultimately surgery was recommended at the end of his release from prison. *Id.*

The law governing medical actions brought by inmates pursuant to 42 U.S.C. § 1983 is well-established. Such actions are based in the Eighth Amendment, as applied to the states through the Fourteenth Amendment, since "[t]he Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide inmates with medical care." *Dulaney v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (*citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "To prevail on an Eighth Amendment claim of constitutionally inadequate medical care,

the inmate must show that the prison officials' conduct amounted to 'deliberate indifference to [the prisoner's] serious medical needs.'" *Id.* (alteration in original). [2]

Proving deliberate indifference to a serious medical need requires showings of both an objective and a subjective component. *Id.* at 1239. An inmate "must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs. *Id.* (*citing Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)); *see also Corwin v. City of Independence, MO*, 829 F.3d 695, 698 (8th Cir. 2016). Deliberate indifference to serious medical needs equates to "the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 105 (*citing Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Thus, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106.

There is no question that injury to the neck and spine are serious injuries. Rather, the focus is whether the State of Iowa was deliberately indifferent to the serious medical needs of Stark. In this case, the undisputed facts establish that Stark was evaluated and treated at UIHC with regard to his medical concerns. The UIHC had the responsibility of providing such expert care to Stark – and the IDOC was not involved in the actual treatment decisions. The State of Iowa followed the medical decisions of UIHC and presented him for treatment at the dates and

---

[2] A similar issue was considered in *Starbeck v. Linn County Jail*, 871 F. Supp. 1129 (N.D. Iowa 1994) when an offender admitted into jail – and subsequently admitted into prison – had back injuries. The summary judgment motion was denied as the prison officials had failed to present evidence as to the treatment provided to the offender.

times requited by them to treat his medical needs. In short, Stark can not establish that the State of Iowa or any prison officials were deliberately indifferent to his medical needs.

Furthermore, an inmate's disagreement over the proper course of treatment does not implicate the Eighth Amendment. *See Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990). Because "[p]risoners do not have a constitutional right to any particular type of treatment," "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement the prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (citations omitted). This makes sense, given that "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

This is not the case where Stark did not receive health care. Rather, Stark received continuing evaluations and treatment at UIHC. Stark received all such treatments – in addition to any treatments that he received at the institution where he was incarcerated. Stark does not get to choose the timing and type of medical treatment that he receives. Rather, such decisions are made based upon the medical judgment and the resources that are available. Merely because Stark does not get the treatment he wants in the time frame he wants does not establish a constitutional violation.

Finally, the Eighth Circuit has held that in cases where an inmate's alleged constitutional deprivations relate to a delay in treatment, as opposed to an outright denial, "the objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay.'" *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (internal citations omitted). "To establish [that a delay in medical treatment rises to the level of an Eighth Amendment violation],

the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment . . . .'' *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (*quoting Crowley*, 109 F.3d at 502). Thus, unless Plaintiff places verifying medical evidence in the record to establish that the delays in medical treatment he complains of—delays that were specifically attributable to Defendants in this case, as opposed to UIHC medical professionals—had detrimental effects on his ultimate prognosis, summary judgment is appropriate. *See, e.g., Crowley*, 109 F.3d at 502 ("Here, we find that [the plaintiff] has failed to submit verifying medical evidence that delay in [treatment] had any adverse affect on his prognosis. . . . Because [the plaintiff] failed to make a showing sufficient to establish an essential element of his Eighth Amendment claim, the district court properly granted summary judgment against him.").

The record of the UIHC visits by Stark does not establish a denial to treatment or an excessive delay. While Stark may claim that he wanted to be provided quicker service, that is not the test to establish a delay in treatment. Stark would have to establish the harm from the alleged delay in treatment. The problem in this case is that the health care professionals were deliberate in their approach in testing and less evasive alternatives prior to recommending surgery. Such an approach does not constitute an unnecessary delay, but is simply medical judgment.

### III. THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

The final consideration, is that even if any of the allegations raised by the Plaintiff have a viable basis, the Defendants would be entitled to qualified immunity as their conduct does not violate clearly established law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Clearly

established law" should not be defined "at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). The clearly established law must be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id*., at 639, 107 S.Ct. 3034; *See White v. Pauly*, ___U.S. ___137 S.Ct. 548, 196 L.Ed.2d 463 (2017).

The result is that there is no evidence that the Defendants violated a well established law. First, with respect to the medical treatment, Stark received prompt and appropriate care —and was evaluated and treated by UIHC many times during his stay in prison. There is no evidence of a delay in care, and alleged damages caused by a delay in care or any claim that the UIHC did not provide appropriate care to Stark. Rather, the claims appear to be based on the claims that Stark did not receive surgery as quick as he wanted.

Likewise, as to any claim under the Iowa Constitution. There is no well, established law that the Iowa Constitution is even self executing as to a claim for relief at this point – let alone a claim that the State of Iowa violated any particular constitutional provision. *See Meyer v. Herdon*, ___ F.Supp.2d ___ (S.D. Iowa 2019).

**IV.    CONCLUSION.**

The Defendants' summary judgment motion must be granted.

THOMAS J. MILLER

Attorney General of Iowa

 /s/ WILLIAM A. HILL
WILLIAM A. HILL (AT0003532)
Assistant Attorney General
Special Litigation Division
Hoover Building, 2nd Floor
1305 E. Walnut
Des Moines, IA  50319
Ph:  (515) 281-6162
Fax:  (515) 281-4902
Email: William.Hill@ag.iowa.gov
ATTORNEYS FOR STATE OF IOWA

Original filed.
Copy to:
David O'Brien
Dave O'Brien Law
1500 Center Street NE
Cedar Rapids, IA 52402
Attorney for Plaintiff

Steven Ort
Bell, Ort & Liechty
200 W. Main St., P.O. Box 143
New London, IA 52645
Attorney for Lee County, Iowa,
Steve Sproul, Jeremy Hamilton,
Zachary Coppage, Dustin Young
and Clint Wray

**Proof of Service**

The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on March 18, 2020.

___ U.S. Mail          ___ FAX
___ Hand Delivery      ___ Overnight Courier
___ Federal Express    ___ Other
_x_ Electronically
Signature:    /s/  Jessica R. Porter

12