IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JAYMES ANTHONY STARK,<br><br>Plaintiff,<br><br>v.<br><br>LEE COUNTY, IOWA, THE STATE OF IOWA, STEVE SPROUL, JEREMY HAMELTON, ZACHARY COPPAGE, DUSTIN YOUNG, and C.J. WRAY,<br><br>Defendants. | No. 3:18-cv-00069-RGE-CFB<br><br>ORDER GRANTING DEFENDANT STATE OF IOWA'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Jaymes Anthony Stark brought this action under 42 U.S.C. § 1983. ECF No. 1. Now before the Court now is Defendant State of Iowa's motion for summary judgment. ECF No. 51. The Court previously granted in part and denied in part a motion for summary judgment filed by all other defendants. ECF No. 43. Stark requested additional time to resist the State's motion,[1] ECF No. 56, but has since filed a pro se resistance. ECF Nos. 53, 58. Finally, counsel for Stark moves to withdraw as counsel with respect to the claims against the State of Iowa. ECF No. 55.

For the following reasons, the Court grants summary judgment for the State of Iowa.

---

[1] In his motion for additional time, Stark alleges he is currently incarcerated at the Des Moines County Correctional Center where he is "locked in a cell, 23 hours a day," which does not leave him adequate time to use the law library. ECF No. 56 at 1. He also alleges he is being retaliated against for filing the present lawsuit, stating he does "not feel safe in this jail for numerous reasons, including sexual harassment, retaliation[;] they intentionally skip my rec, and they throw my lawsuit in my face daily." *Id.* at 2. Stark asks to be transferred to a neighboring county and to have access to the law library. *Id.*

These allegations are based on different facts, defendants, and claims, and do not relate to the claims brought in his original complaint. *See* ECF No. 1. The Court will not address the claims made by Stark in this motion. If he believes the current conditions of confinement are violating his constitutional rights, he may file a separate lawsuit regarding these conditions.

I.  **SUMMARY OF MATERIAL FACTS**

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotations omitted); *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (same).

Dr. Jerome Greenfield is employed as the Medical Director for the Iowa Department of Corrections. Greenfield Aff. ¶ 1, Def.'s App. Supp. Mot. Summ. J. 19, ECF No. 51-3. He is responsible for providing medical and dentistry services to all incarcerated individuals in the Iowa prison system. Greenfield Aff. ¶ 2, ECF No. 51-3 at 19. Dr. Greenfield is familiar with the medical treatment provided to Stark from the University of Iowa Hospitals and Clinics system for his neck condition. Greenfield Aff. ¶ 9, ECF No. 51-3 at 20.

Generally, the medical staff at each individual prison treat routine medical issues. Greenfield Aff. ¶ 5, ECF No. 51-3 at 20. In the event of a more complex or difficult medical condition, an incarcerated individual may be referred to the University of Iowa for further evaluation and treatment. Greenfield Aff. ¶ 6, ECF No. 51-3 at 20. In such circumstances, the University of Iowa provides and directs all treatment for the medical condition, and the Department of Corrections relies on the University's expertise in addressing a specific condition. Greenfield Aff. ¶ 7, ECF No. 51-3 at 20.

Stark alleges his back and neck were injured on June 29, 2016, while he was in the custody of the Lee County Sheriff's Office. ECF No. 1 ¶¶ 13–22, 56. Stark was transferred to the custody of the Department of Corrections at the Iowa Medical and Classification Center in Oakdale, Iowa, on July 1, 2016. *See* ECF No. 51-3 at 24. Stark avers he made 148 sick call requests and filed 42 grievances from July 1, 2016 to March 14, 2018, regarding his neck injury, all which were denied. Pl.'s Aff. 1, ECF No. 58. He states he was accused of "faking" his condition, and his "pain was so

bad that [he] couldn't walk." *Id.* at 3. He states "[he] was dragged hogtied with handcuffs across the yard in Ft. Dodge to administrative segregation because [he] could [not] climb stairs and get on the top bunk of a 3 man cell that is like 10 feet off the ground[;]. . . . [t]he whole time [he] was screaming and crying out in agony." *Id.* He avers he received no treatment whatsoever during the first incarceration period following his injuries. *Id.* at 7. The Department of Corrections provides no evidence relevant to treatment during this period.

Stark was discharged to parole on March 14, 2018. ECF No. 51-3 at 23. On June 22, 2018, Stark was returned to the custody of the Department of Corrections where he remained until his discharge on October 24, 2019. *Id.* After he was reincarcerated, Stark indicated ongoing problems with his neck. Greenfield Aff. ¶ 11, ECF No. 51-3 at 20. Stark was referred to the University of Iowa neurosurgery department for evaluation and treatment of his neck/back condition on June 25, 2018. Greenfield Aff. ¶ 13, ECF No. 51-3 at 21. The neurosurgery department examined and evaluated Stark on September 14, 2018. Greenfield Aff. ¶ 14, ECF No. 51-3 at 21; *see also* ECF No. 51-3 at 30–46. Hospital physicians referred Stark to the University pain clinic and scheduled Stark for further testing and follow up in two months. Greenfield Aff. ¶ 15, ECF No. 51-3 at 21.

Stark was seen at the pain clinic on November 9, 2018, and referred for an epidural steroid injection. Greenfield Aff. ¶ 16, ECF No. 51-3 at 21. Additionally, some changes were made to his medication. *Id.* On December 14, 2018 Stark was again examined and evaluated by University of Iowa neurosurgery department. ECF No. 51-3 at 47. An epidural steroid injection was recommended at that time. *Id.* at 55. On March 25, 2019, Stark had an epidural injection at the University pain clinic. *Id.* at 62–63.

Stark was referred to the University of Iowa neurosurgery department again on April 11, 2019, for additional evaluation. *Id.* at 70. Stark was seen at the neurosurgery department July 23, 2019, at which time an MRI of his spine was ordered. *Id.* at 70. On July 24, 2019, the Department

of Corrections again referred Stark to the University of Iowa. *Id.* at 80. Stark had an MRI at the University of Iowa on August 13, 2019, *id.* at 81, and during the visit, the doctor recommended surgical intervention. *Id.* at 88.

During Stark's second period of custody by the Department of Corrections, all medical care for his back and neck was directed by the University of Iowa. Greenfield Aff. ¶ 23, ECF No. 51-3 at 22. The Department of Corrections arranged for Stark to be evaluated and treated at the University of Iowa but was not involved in the medical decisions related to how such care was to be provided. Greenfield Aff. ¶ 24, ECF No. 51-3.

Stark agrees he received some treatment during his second incarceration. However, he states:

> [T]he [Department of Corrections] still refused to follow the plan of care and all of the recommendations from the pain clinic, and the neurosurgeons at [University of Iowa] by taking me to my appointments [three] months late when I was supposed to be back in [two] weeks, refusing to give me the neck brace for [ten] weeks, refusing to take me back in [eight] weeks for evaluation to see if the neck brace improved my condition with an MRI appointment and instead, I was stuck in the neck brace for [seven] months because the [Department of Corrections] staff would not honor my scheduled appointments and the recommendations from [University of Iowa].

ECF No. 58 at 8–9.

Stark discharged from prison on October 24, 2019. ECF No. 51-3 at 23. No further information is available as to whether the surgery was completed. Greenfield Aff. ¶ 22, ECF No. 51-3 at 22.

## II. SUMMARY JUDGMENT STANDARD

The Court will grant summary judgment if, viewing the evidence in the light most favorable to the nonmoving party, "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward

with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mt. View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cty.*, 621 F.3d 740, 743 (8th Cir. 2010)).

To avoid an entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To show a fact is genuinely disputed, a party must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The quantum of proof the nonmoving party must produce is not precisely measurable, but it must be enough evidence "such that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts"); *Williams v. City of Carl Junction*, 480 F.3d 871, 873 (8th Cir. 2007) ("[T]he nonmoving party must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial.") (internal quotation marks omitted)).

## III. DISCUSSION OF APPLICABLE LAW

Stark claims the State of Iowa's failure to appropriately treat his serious medical needs while he was in prison was cruel and unusual, violating his Eighth Amendment rights under the United States Constitution, and Article I, § 17 of the Iowa Constitution. ECF No. 1 ¶¶ 53–68.

5

When Stark filed his complaint on June 28, 2018, he was still in the custody of the Department of Corrections. ECF No. 51-3 at 23 (listing discharge date as October 24, 2019). Stark seeks injunctive relief against the State of Iowa to provide "all necessary medical evaluation and treatment" with regard to his neck injury. ECF No. 1 ¶ 68. He also asks for judgment against the State of Iowa for "an amount which will fully and fairly compensate him for his injuries and damages based upon the delay in providing necessary medical care and treatment." *Id.* Counsel for Stark initially pursued the claims against the State of Iowa "in order to ensure that Stark got the medical treatment the needed, including surgery." Pl.'s Mot. Withdraw ¶ 1, ECF No. 55. In his motion to withdraw as counsel, Stark's counsel noted: "[t]hat goal has been accomplished." *Id.* Thus, only Stark's claim for money damages from the State of Iowa remains.

The State of Iowa moves for summary judgment, arguing: 1) it has Eleventh Amendment immunity as to any federal claims; 2) Stark has no private cause of action for damages against the State of Iowa; and 3) the State of Iowa was not deliberately indifferent to Stark's serious medical needs. Def.'s State of Iowa Br. Supp. Mot. Summ. J. 6, ECF No. 51-1.

### A. United States Constitution

Under the Eleventh Amendment, states and their agencies are immune from suit in federal court unless Congress has abrogated the state's immunity by some express statutory provision, or the state has consented to suit. *See* U.S. Const. amend. XI; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989); *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) ("A suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983."). Because the State of Iowa has immunity for any § 1983 claim, summary judgment on Stark's § 1983 claim based upon an alleged Eighth Amendment violation is granted.

### B. Iowa Constitution

The State of Iowa also moves for summary judgment on Stark's claim of deliberate indifference under the Iowa Constitution, arguing "there is no well established law defining the contours of such a right under the Iowa Constitution," *see* ECF No. 51-1 at 6 n.1, and it was not deliberately indifferent to Stark's serious medical needs. *Id.* at 6–10. Stark's claims occurred over two distinct time periods, from July 2016 through March 2018, and again when he was reincarcerated from June 2018 until his discharge in October 2019. The Court considers each of these time periods separately.

#### 1. July 2016 to March 2018

Stark avers that from July 1, 2016, until he was placed on work release in March 2018, he was accused of faking or exaggerating the injuries he incurred in June 2016. ECF No. 58 at 3. He contends he submitted 42 grievances and 148 sick call requests, and all were denied. *Id.* at 6. He states during this period nothing was done for him. *Id.* at 7. He seeks monetary damages against the State of Iowa for his pain and suffering and permanent disability. *Id.* at 5–6.

A private right of action for damages under the Iowa Constitution is judicially enforceable if the right is self-executing, that is, the right does not merely indicate principles but "supplies a sufficient rule by means of which the right given may be enjoyed and protected." *Godfrey v. State*, 898 N.W.2d 844, 870 (Iowa 2017) (quoting *Davis v. Burke*, 179 U.S. 399, 403 (1900)). Stated differently, "for the rights guaranteed in the Constitution to be more than mere wishes or requests, litigants must be able to enforce those rights in the courts when there is no other effective means to enforce them." *Id.*

The United States Supreme Court recognized the Fourth Amendment's guarantee against unreasonable searches and seizures as one example of a self-executing provision. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971) (allowing plaintiff

to pursue private cause of action for money damages under Fourth Amendment). Likewise, the Iowa Supreme Court held the Equal Protection and Due Process clauses of the Iowa Constitution are "self-executing," permitting damages without legislative authorization, "when the legislature has not provided an adequate remedy." *Godfrey*, 898 N.W.2d at 847, 880–81 (Cady, J., concurring in part and dissenting in part).

In *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court held an implied cause of action exists under the Eighth Amendment. *Id.* at 23; *see also id.* at 16 n.1 (noting respondent died when federal prison staff failed to provide adequate medical treatment for chronic asthmatic condition). This ruling was based primarily on the Court's determination Congress did not intend for the Federal Tort Claims Act "to pre-empt a *Bivens* remedy or to create an equally effective remedy for constitutional violations." *Id.* at 19–20 (observing "congressional comments accompanying [Federal Tort Claims Act Amendment in 1974] made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of actions.").

No authority supports a similar recognition with respect to the cruel and unusual provision of the Iowa Constitution. *See* Iowa Const. § 17. "Tort claims against the government in Iowa are governed by [Iowa] chapter 669, for state tort claims, and [Iowa] chapter 670, for municipal tort claims." *Baldwin v. City of Estherville*, 915 N.W.2d 259, 265–66 (Iowa 2018). The Iowa legislature has given a broad definition to the word "tort," and specifically includes constitutional torts in its definition. *Baldwin v. City of Estherville*, 929 N.W.2d 691, 697 (Iowa 2019) (discussing torts in the context of Iowa Municipal Tort Claims Act). This expansive definition demonstrates the Iowa legislature's intent for state tort claims legislation to be the exclusive remedy over constitutional torts. *Id.* (acknowledging difference between Federal Tort Claims Act and Iowa Municipal Tort Claims Act). Where there is an alternative civil remedy which preempts the constitutional claim, no private right of action exists. *See Godfrey*, 898 N.W.2d at 880 (Cady, J.

concurring in part and dissenting in part) (agreeing to "recognize a tort claim under the Iowa Constitution when the legislature has not provided an adequate remedy").

Under the Iowa Tort Claims Act, a person may bring a claim for money damages based on personal injury "caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment, under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death." Iowa Code § 669.2(3)(a).

The State of Iowa presents no evidence of any treatment of Stark whatsoever during this first incarceration period. Nor does the State acknowledge Stark's multiple grievances and requests for medical care. Even so, nothing in the record indicates Stark filed a claim or exhausted his administrative remedies regarding these circumstances under the Iowa Tort Claims Act. Moreover, Stark does not argue the Iowa Tort Claims Act is inadequate to vindicate his constitutional rights.

Given the Iowa Supreme Court's narrow recognition of private right of action for damages for state constitutional torts, coupled with the absence of any request by Stark for this Court to do so, the Court will not recognize a private right of action for damages under § 17 of the Iowa Constitution. Summary judgment in favor of the State of Iowa based on claims arising during Stark's first period of incarceration is appropriate.

### 2. June 22, 2018 to October 24, 2019

Stark concedes he did receive some treatment during his second period of incarceration, June 22, 2018, through October 24, 2019. ECF No. 58 at 8–9. University of Iowa physicians examined Stark at multiple appointments and provided him with an epidural shot. ECF No. 51-3 at 26–101. Stark avers, however, that the Department of Corrections staff did "not honor my scheduled appointments and the recommendations" of the University of Iowa Hospitals and clinics physicians, and instead delayed appointments and refused him a neck brace for ten weeks. ECF

No. 58 at 9.

Stark has not indicated he sought relief the Iowa Tort Claims for his claim regarding this second period of incarceration nor does he argue the Act is inadequate to vindicate his state constitutional rights. For the reasons discussed above, his claim for damages under the Iowa constitution regarding the second period of incarceration must be denied.

Moreover, where a plaintiff's claim is based on a delay of treatment, a plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119–20 (8th Cir. 2016) (internal quotation marks omitted). Although Stark avers his attorney has documentation to show who was responsible for his health care and that he repeatedly requested medical care, ECF No. 58 at 8, he does not aver either he or counsel has medical evidence to measure the objective severity of any alleged deprivation of the delays in treatment.

Summary judgment in favor of the State of Iowa based on claims arising during Stark's second period of incarceration also is appropriate.

## IV. MOTION TO WITHDRAW

In response to the motion for summary judgment, Stark requested new counsel to represent him on the claims against the State of Iowa. ECF No. 53. Magistrate Judge Celeste F. Bremer denied the motion for new counsel and allowed counsel to file a motion to withdraw. ECF No. 54 at 2. Magistrate Judge Bremer also extended the time to resist the motion for summary judgment. *Id.* Stark's counsel moves to withdraw with respect to the claims against the State of Iowa but sought to remain as counsel as to the claims against the Lee County defendants. ECF No. 55. Because the Court grants summary judgment in favor of the State of Iowa on all claims, the motion to withdraw is moot.

## V. SUMMARY AND RULINGS

Based on the foregoing discussion,

**IT IS ORDERED** that Defendant State of Iowa's Motion for Summary Judgment, ECF No. 51, is **GRANTED**.

**IT IS FURTHER ORDERED** that counsel's motion to withdraw, ECF No. 55, is **DENIED** as moot.

**IT IS FURTHER ORDERED** that because Stark filed his pro se resistance, *see* ECF No. 58, his motion for more time to respond to the motion for summary judgment, ECF No. 56, is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this 30th day of July, 2020.

*[signature]*
REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE